T.C. Memo. 2001-101

UNITED STATES TAX COURT

ROBERT WILLIS BARKLEY, SR., Petitioner $\underline{v}$.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 18648-99.                    Filed April 26, 2001.

Robert Willis Barkley, Sr., pro se.

Mary Kay McIlyar, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ARMEN, Special Trial Judge:  Respondent determined a
deficiency in petitioner's Federal income tax for the taxable
year 1997 in the amount of $994.

After concessions by the parties,[1] the issue for decision is
whether respondent erred in crediting an overpayment claimed by

---

[1]  The parties' concessions are described infra in the text.

petitioner on his 1997 return against an outstanding liability owed by him for 1988.  We hold that respondent did not err.

FINDINGS OF FACT

Some of the facts have been stipulated, and they are so found.

Petitioner resided in Gunter, Texas, at the time that his petition was filed with the Court.

A.  Petitioner's Tax Return for the Year in Issue

Petitioner timely filed a Federal income tax return, Form 1040A, for 1997.  On his return, petitioner claimed a credit for child and dependent care expenses (the childcare credit) in the amount of $960.

In support of the childcare credit, petitioner attached to his return Schedule 2, Child and Dependent Care Expenses for Form 1040A Filers.  In filling out Schedule 2, petitioner mistakenly failed to complete Part III, Dependent Care Benefits.  As a consequence, the amount of the childcare credit that petitioner claimed on Schedule 2 was overstated.  This resulted in petitioner's claiming an overpayment of tax on his return in the amount of $694.[2]

---

[2]  If petitioner had filled out Schedule 2 correctly, a childcare credit in the amount of $251 would have been indicated. This would have resulted in petitioner reporting a balance due of $15 on his return.

Respondent's service center processed petitioner's return as though petitioner were entitled to the amount of the childcare credit claimed by him on Schedule 2.

B.  <u>Disposition of the Claimed Overpayment</u>

At the time that petitioner filed his 1997 return, he was liable for unpaid income taxes for 1988 and 1989.  Accordingly, in May 1998, respondent credited the $694 overpayment claimed by petitioner on his 1997 return against his 1988 liability.[3]

C.  <u>Petitioner's Offer in Compromise</u>

On or about February 24, 1998, petitioner submitted an offer in compromise, Form 656, seeking to compromise his outstanding income tax liabilities for 1988 and 1989 in exchange for (1) the payment of a fixed amount of money and (2) agreeing to various terms and conditions.  Respondent accepted petitioner's offer in compromise on or about July 24, 1998.

Paragraphs (g) and (j) of the offer in compromise provided in pertinent part as follows:

> (g) The IRS will keep any refund, including interest, due to me/us because of overpayment of any tax or other liability, for tax periods extending through the calendar year that the IRS accepts the offer.[4] * * *

----

[3]  So stipulated.  Although the bookkeeping entries may have been made in May 1998, the transcripts of account for both the overpayment year (1997) and the liability year (1988) indicate that the credit was effective April 15, 1998.

[4]  Read literally, paragraph (g) would appear to entitle respondent to "keep" a taxpayer's refund even if the amount thereof exceeded the taxpayer's total outstanding liability that

(continued...)

(j) I/we understand that I/we remain responsible for the full amount of the tax liability, unless and until the IRS accepts the offer in writing and I/we have met all the terms and conditions of the offer.  The IRS will not remove the original amount of the tax liability from its records until I/we have met all the terms of the offer.

D.  Examination of Petitioner's 1997 Return

Sometime after respondent accepted petitioner's offer in compromise, respondent commenced an examination of petitioner's income tax return for 1997.  The examination culminated in the issuance of the notice of deficiency in September 1999 from which petitioner appealed to this Court.

E.  Respondent's Concession and Contention

Respondent concedes that the deficiency as determined in the notice of deficiency is overstated and that the correct amount of the deficiency is $709.  In this regard, respondent contends that the deficiency is equivalent to the difference between the childcare credit claimed by petitioner on his return (and allowed by respondent's service center in processing petitioner's return) and the childcare credit to which petitioner is entitled, as shown by the following:

| | |
|---|---|
| Childcare credit claimed | $960 |
| Less: allowable childcare credit | -251 |
| Deficiency | 709 |

---

⁴(...continued)
was the subject of an offer in compromise.  The facts in the present case do not, however, require that we decide this matter.

F.  Petitioner's Concessions and Contentions

Petitioner concedes that he mistakenly failed to complete Part III of Schedule 2, Child and Dependent Care Expenses for Form 1040A Filers, and that, as a consequence, the amount of the childcare credit shown on Schedule 2 was overstated.  Petitioner also concedes (and respondent agrees) that the amount of the childcare credit to which he is entitled is $251.  Finally, petitioner concedes that instead of claiming a $694 overpayment on his return, he should have reported a balance due of $15, as shown by the following:

```
Childcare credit claimed              $960
Less: allowable childcare credit      -251
Excess childcare credit claimed        709
Less: overpayment claimed per
      return as filed                 -694
Balance due                             15
```

Petitioner contends that respondent should not have credited the $694 overpayment claimed on his 1997 return to his tax liability for 1988 because, he contends, respondent's acceptance of the offer in compromise conclusively resolved his tax liability for 1988.  Thus, petitioner contends, the $694 overpayment remained available to offset all but $15 of the excess childcare credit ($709) to which he is admittedly not entitled.

## OPINION

We agree with petitioner that he should not have claimed a
$694 overpayment on his 1997 return but rather should have
reported a balance due of $15.  However, we decide issues by
judging what actually happened and not by what should have
happened. See <u>Commissioner v. National Alfalfa Dehydrating &
Milling Co.</u>, 417 U.S. 134, 148-149 (1974).

The undisputed facts in this case demonstrate that
petitioner claimed a $694 overpayment on his 1997 return and that
respondent credited the overpayment against an outstanding income
tax liability owed by petitioner for 1988.

We reject petitioner's contention that respondent should not
have credited the 1997 overpayment against the 1988 liability.
Respondent's action was taken pursuant to statutory authority
conferred by section 6402(a).[5]   That section provides in
relevant part as follows:

> (a)General Rule.--In the case of any overpayment,
> the Secretary * * * may credit the amount of such
> overpayment * * * against any liability in respect of
> any internal revenue tax on the part of the person who
> made the overpayment * * * .

At the time that petitioner filed his 1997 return and
claimed an overpayment, he owed tax for 1988.  At the time that
respondent credited the claimed overpayment against the
outstanding liability, no contractual or other limitation

---

[5]  All section references are to the Internal Revenue Code
in effect for 1997, the taxable year in issue.

constrained respondent's authority to take such action. Respondent was therefore fully justified in crediting petitioner's 1997 overpayment against petitioner's 1988 liability.

We also reject petitioner's contention that respondent's acceptance of the offer in compromise served to invalidate respondent's prior action in crediting the 1997 overpayment against the 1988 liability. In order to induce respondent to accept the offer in compromise, petitioner agreed not only to pay a fixed amount of money, but also to forgo any refund attributable to an overpayment of tax for any taxable year through 1998. Thus, the premise for petitioner's contention; i.e., that the mere payment of the fixed amount of money upon submission of the offer in compromise "wiped the slate clean" insofar as his 1988 tax liability was concerned, is fatally flawed.[6]

---

[6] We remind petitioner that under paragraph (j) of the offer in compromise he remained liable for the full amount of the liabilities for 1988 and 1989 unless and until respondent accepted the offer and he "met all the terms and conditions of the offer." As spelled out in paragraph (g) of the offer in compromise, one of those terms and conditions was his agreement to forgo any refund attributable to an overpayment of tax for any taxable year through 1998.

In conclusion, we hold that respondent's action in crediting the 1997 overpayment against the 1988 liability was fully consistent with the offer in compromise, as well as with operative provisions of statutory law. See Terry v. Commissioner, 91 T.C. 85, 87 (1988) (after applying an overpayment to a taxpayer's liability for another taxable year, the Commissioner is not precluded from subsequently determining a deficiency for the taxable year in respect of which the overpayment was originally claimed and allowed); see also McKoin v. Commissioner, T.C. Memo. 2001-62. In so holding, we are mindful of section 6512(b)(4), which serves to deny jurisdiction to the Court "to restrain or review any credit or reduction made by the Secretary under section 6402." Savage v. Commissioner, 112 T.C. 46, 49 (1999).

We have carefully considered remaining arguments made by petitioner for a result contrary to that expressed herein, and, to the extent not discussed above, we consider those arguments to be without merit.[7]

---

[7] We specifically note that the absence of any reference to the $694 credit on certain IRS mailings that petitioner received in May and June 1998 does not mean that respondent never credited petitioner with the 1997 overpayment. Transcripts of account for the relevant years clearly demonstrate that respondent credited the 1997 overpayment to the 1988 liability.

In order to give effect to our disposition of the disputed issue, as well as the parties' concessions,

<u>Decision will be entered for respondent in the amount of the reduced deficiency of $709.</u>