T.C. Memo. 2010-118

UNITED STATES TAX COURT

JOANNA DEL VALLE VILLAFANE, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 26856-08.                    Filed June 1, 2010.

Joanna Del Valle Villafane, pro se.

<u>Blaine Holiday</u>, for respondent.

MEMORANDUM OPINION

GUSTAFSON, <u>Judge</u>:  The Internal Revenue Service (IRS) issued to petitioner Joanna Del Valle Villafane a statutory notice of deficiency pursuant to section 6212[1] for the year 2006, showing

---

[1]Unless otherwise indicated, all citations of sections refer to the Internal Revenue Code of 1986 (26 U.S.C.), as amended, and all citations of Rules refer to the Tax Court Rules of Practice and Procedure.

the IRS's determination of an $850 deficiency in income tax. Ms. Villafane brought this case pursuant to section 6213(a), asking this Court to redetermine that deficiency, and in his amended answer respondent asserted a deficiency in a greater amount, $2,326. The case is currently before the Court on respondent's motion for summary judgment. After respondent's concession of the principal issue in the notice of deficiency,[2] the issues for decision are whether Ms. Villafane is entitled to medical expense deductions and education credits, and whether the tax refund she received is taken into account in calculating her deficiency. For the reasons explained below, we will grant respondent's motion.

## Background

The following facts are based on Ms. Villafane's petition, her testimony at a partial trial held September 14, 2009, and documents that she provided to respondent and that were attached to a status report filed January 25, 2010. At the time she filed her petition, Ms. Villafane resided in Minnesota.

Ms. Villafane's 2006 income and expenses

In 2006 Ms. Villafane earned wages of $20,337 from two employers. From those wages the employers withheld a total of $2,296 in income tax. The employers issued Forms W-2, "Wage and

---

[2]Respondent concedes that Ms. Villafane did not receive $6,139 in discharge of indebtedness income from the forgiveness of credit card debt.

Tax Statement", showing the amounts of wages and withholding.[3] In 2006 Ms. Villafane did not incur medical expenses or educational expenses, and she has never alleged that she did.

Ms. Villafane's 2006 return

Ms. Villafane hired a tax return preparer, to whom she gave the Forms W-2 from her employer. The preparer informed Ms. Villafane that she would receive a refund of $2,015.05. The preparer had Ms. Villafane sign a paper authorizing the preparer to direct the IRS to pay the refund directly into the preparer's account and authorizing the preparer to pay Ms. Villfane her refund by a check from the preparer. The preparer issued a bank check to Ms. Villafane in the amount of $2,015.05, as she had stated she would do, and the check is dated April 15, 2007 (which was a Sunday).

The electronic signature date on Ms. Villafane's return is April 16, 2007 (which was a Monday). Ms. Villafane never saw any copy of the return that was filed electronically on her behalf.

---

[3]Manpower of Texas Limited Partnership issued to Ms. Villafane a Form W-2 for 2006 showing wages of $12,309.38 and Federal income taxes withheld of $1,468.99. Staples the Office Superstore issued to Ms. Villafane a Form W-2 for 2006 showing wages of $8,028.48 and Federal income taxes withheld of $827.19. In total, Ms. Villafane had wages of $20,337.86 and Federal income tax withheld of $2,296.18. However, Ms. Villafane rounded her wages down to $20,337 on her return, and respondent appears to have rounded down her wages and income tax withheld to the nearest dollar in his filings with this Court. For simplicity, we adopt the parties' convention of rounding down Ms. Villafane's wages and income tax withheld to the nearest dollar.

The return claimed deductions for $5,017 in medical expenses, claimed credits for $1,156 in education expenses, and reported a zero tax liability. Ms. Villafane never incurred those expenses and never authorized the claiming of those deductions and credits. The return also overstated Ms. Villafane's withholding credits by $200, claiming $2,496 instead of the $2,296 that had actually been withheld. Ms. Villafane was not aware of these errors. The return claimed a $162 credit for telephone excise tax paid and claimed a refund of $2,658 (consisting of the claimed withholding credits of $2,496 plus the telephone excise tax credit of $162). The return directed that the IRS send the refund to an account owned by the return preparer. The parties assume that the IRS sent to the preparer's account a refund in the claimed amount of $2,658, but the record does not show the amount of the refund.[4] In view of the preparer's prior issuance of a $2,015.05 check to Ms. Villafane, the preparer thus retained $642.95 of the refund.

The notice of deficiency

On August 4, 2008, the IRS issued to Ms. Villafane a notice of deficiency for the year 2006. The IRS had received a credit

---

[4]For the reasons stated below in part II.B, a finding as to the amount of the refund is not necessary to the resolution of the deficiency in this case, and we adopt the parties' assumption. Nonetheless, it would have been useful to know, and not to have had to assume, the facts about the IRS's receipt and processing of Ms. Villafane's return.

card company's report of discharge of indebtedness income, which had not been reported on Ms. Villafane's return. The notice of deficiency increased Ms. Villafane's income by the amount of the discharge and also made corresponding computational adjustments that reduced, in small part, her (improper) medical expense deductions and education credits. (Respondent now concedes the discharge-of-indebtedness issue.) On the basis of those adjustments, the notice determined a deficiency of $850. The notice also corrected her overstated withholding credit, figured interest due on the underpayment, and advised Ms. Villafane that she owed a total of $1,142 for 2006.

## Ms. Villafane's petition

Ms. Villafane was confused by the notice of deficiency, because she knew she had incurred no medical expenses or educational expenses in 2006. She therefore timely filed a petition in this Court. The petition explained:

> I trusted that the tax preparer was entering in my tax return all the correct info provided; instead I became a victim of what many people encounter many times.
>
> I am just requesting that this information be investigated. I believe the wrong information was provided by the tax preparer.

The petition stated that her withholding had been as the IRS determined it (and not as claimed on her return). The petition affirmatively stated as to the medical expenses that "I didn't provide this information to my tax preparer. I haven't had any

Medical deduction.  This was included without my knowledge and it was unauthorized."  As to the education credits, the petition states:  "I haven't gone to school since 1991, so this amount was entered w/o my knowledge and unauthorized."  That is, the petition disclosed that the medical expense deductions and education credits should have been disallowed in their entirety, and not only in part as on the notice of deficiency.

Proceedings in Tax Court

In view of the disclosures in the petition, respondent asserted, in an amendment to his answer, a deficiency greater than was shown on the notice of deficiency, i.e., $2,326[5] (as compared to $850).

When this case was called from the calendar in St. Paul, Minnesota, on September 14, 2009, the parties had not yet agreed on a stipulation of facts pursuant to Rule 91.  A partial trial was held at which Ms. Villafane testified.  Her testimony was in accord with the foregoing account.  The Court observed that the case had not yet been adequately developed and directed the

---

[5]The computation attached to the amendment to respondent's answer shows (on line 14) a deficiency of $2,326.  The text of that amendment asserts an increase of $1,638 in the deficiency determined in the notice ($850), which would total $2,488. However, that larger amount is the "Balance due" from line 16, which includes "Adjustments to Prepayment Credits" (from line 15), which are not a part of the deficiency computation. See part II.B.2.b below.

parties to attempt to stipulate or settle some or all of the issues.

After attempts at cooperating with Ms. Villafane to stipulate or settle, respondent conceded the discharge-of-indebtedness issue and filed a motion for summary judgment. Despite an order from the Court that she respond, Ms. Villafane has not done so. The case can now be resolved.

## Discussion

### I.   Summary judgment standards

Where the pertinent facts are not in dispute, a party may move for summary judgment to expedite the litigation and avoid an unnecessary and potentially expensive trial. Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Rule 121 provides for summary judgment in terms equivalent to Rule 56 of the Federal Rules of Civil Procedure. Summary judgment may be granted where there is no genuine issue as to any material fact and a decision may be rendered as a matter of law. Rule 121(a) and (b); see Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). Ms. Villafane did not raise any genuine issue of material fact, and the case can be resolved under Rule 121.

II.  Redetermination of Ms. Villafane's deficiency

    A.    Medical expense deductions and education credit

    Ms. Villafane's return, as prepared by the return preparer, claimed medical expense deductions under section 213 that Ms. Villafane did not authorize and that she concedes were improper.  The disallowance of those deductions (and the allowance instead of the standard deduction) as is reflected in the amendment to respondent's answer must therefore be sustained. Likewise, Ms. Villafane's return claimed education credits under section 25A that she concedes were improper, and respondent's proposed disallowance of those credits must be sustained. These adjustments will be reflected in our redetermination of Ms. Villafane's deficiency.

    B.    Ms. Villafane's refund

    The matter of Ms. Villafane's refund ($2,658 paid to the preparer, who paid $2,015.05 to Ms. Villafane) has been a subject of discussion between the Court and the parties.  For that reason, we show here that it does not affect the outcome of this deficiency case.

        1.    A non-rebate refund claimed on an original return

    In a deficiency case under section 6213(a), this Court redetermines a deficiency.  In some circumstances, that redetermination will take account of a refund that has been made to the taxpayer, and that refund will make the subsequent

deficiency greater; but this is not such a circumstance.  The

term "deficiency" is defined in section 6211(a) to mean--

> the amount by which the tax imposed by subtitle A * * *
> exceeds the excess of--
>
>> (1)  the sum of
>>
>>> (A)  the amount shown as the tax by the
>>> taxpayer upon his return, if a return was
>>> made by the taxpayer and an amount was shown
>>> as the tax by the taxpayer thereon, plus
>>>
>>> (B)  the amounts previously assessed (or
>>> collected without assessment) as a
>>> deficiency, over--
>>>
>>> (2)  the amount of rebates, as defined in
>> subsection (b)(2), made.

A "rebate" will therefore increase the amount of a deficiency.

The term "rebate" is defined in section 6211(b)(2) to mean "so

much of an abatement, credit, refund, or other payment, as was

made on the ground that the tax imposed by subtitle A * * * was

less than the excess of the amount specified in subsection (a)(1)

over the rebates previously made."  That is, "a rebate refund is

issued on the basis of a substantive recalculation of the tax

owed."  Interlake Corp. v. Commissioner, 112 T.C. 103, 110

(1999).  There is ordinarily no such "substantive recalculation"

of the liability when the IRS issues a refund of the amount

claimed as an overpayment on a taxpayer's original return.  Thus,

section 6211(b)(1) provides that "[t]he tax imposed by subtitle A

and the tax shown on the return shall both be determined * * *

without regard to the credit under section 31" (i.e., the credit

for income tax withheld from wages);[6] and the regulations under

section 6211 provide:

> For example, assume that the amount of income tax shown
> by the taxpayer upon his return for the taxable year is
> $600 and the amount claimed as a credit under section
> 31 for income tax withheld at the source is $900.  If
> the district director determines that the tax imposed
> by subtitle A is $600 and makes a refund of $300, no
> part of such refund constitutes a "rebate" since the
> refund is not made on the ground that the tax imposed
> by subtitle A is less than the tax shown on the return.
> * * *

26 C.F.R. sec. 301.6211-1(f), Proced. & Admin. Regs.  A refund of

the amount of payroll withholding that is claimed as an

overpayment on an original return is therefore generally not a

"rebate" and does not enter into the calculation of a deficiency.

Of course, the IRS "is not prevented from later determining a

deficiency in tax for such year because of the prior refund", see

Terry v. Commissioner, 91 T.C. 85, 87 (1988), but that deficiency

will be calculated by reference to the tax liability shown on the

return and will not be increased by the amount of the (non-

rebate) refund previously claimed and allowed.

---

[6]See Jordan v. Commissioner, T.C. Memo. 2006-95 n.9 ("by
definition a deficiency is determined without regard to the
sec. 31 credit for tax withheld on wages"), affd. 226 Fed. Appx.
15 (1st Cir. 2007).

### 2.  Refunds of excessive credits

#### a.  Excessive withholding credit

A portion of the refund claimed on Ms. Villafane's return and paid by the IRS resulted from a $200 overstatement of Ms. Villafane's payroll withholding credits claimed under section 31(a)(1).  The IRS took that excess into account in its recomputation of Ms. Villafane's liability for 2006 that it sent with the notice of deficiency, and in that recomputation the proposed liability was increased accordingly.  However, an alleged excessive withholding credit does "not fall within the definition of a deficiency under section 6211(a)," Pen Coal Corp. v. Commissioner, 107 T.C. 249, 256 (1996); and the excessive credit did not figure into the deficiency per se (amounting to $850) as determined in the notice of deficiency.

#### b.  Telephone excise tax refund

The increase in the deficiency that respondent asserted in the amendment to his answer would reclaim $162 in telephone excise tax previously refunded to Ms. Villafane--a refund that appears on income tax returns only for 2006.  Section 4251 imposes an excise tax on "communications services", and in 2006 the Government conceded the non-taxability of most long-distance telephone service and undertook to refund the tax to 160 million taxpayers.  See Notice 2006-50, 2006-1 C.B. 1141.  The means chosen for making the telephone excise tax refund (TETR) was the

income tax return.  For 2006 the Form 1040, "U.S. Individual

Income Tax Return", included among the "Payments" (lines 64-72) a

line 71 ("Credit for federal telephone excise tax paid") on which

a taxpayer claimed the refund as if it were a payment of tax,

i.e., along with witholding credits and the like.[7]

Ms. Villafane's income tax return for 2006 claimed a credit

of $162 for telephone excise tax allegedly overpaid, and the

refund that she was allowed included that amount.  The IRS's

amended answer would take the TETR back from her by increasing

her deficiency by the same amount.  In so doing respondent in

effect asked the Tax Court to determine that Ms. Villafane's TETR

was excessive.

However, an allegedly excessive telephone excise tax credit

does not properly enter into the computation of a deficiency

under section 6211(a), and we therefore do not have jurisdiction

to determine it.  The TETR was (properly) characterized on Form

1040 for 2006 as a payment; and as section 301.6211-1(b), Proced.

& Admin. Regs., states, "Payments on account of estimated income

tax, like other payments of tax by the taxpayer, shall likewise

---

[7]Form 1040-A, "U.S. Individual Income Tax Return", had an equivalent line 42; and Form 1040EZ, "Income Tax Return for Single and Joint Filers With No Dependents", had an equivalent line 9.  For persons who did not owe any income tax and would not otherwise file a return, the IRS promulgated a special Form 1040EZ-T, "Request for Refund of Federal Telephone Excise Tax", on which a person would claim only the TETR.)

be disregarded in the determination of a deficiency."  The

Internal Revenue Manual (IRM) states:

> The TETR amount is considered a Non-Rebate refund, and
> must be worked pre-refund.  Exam will not look at cases
> once the TETR amount has been refunded.

IRM pt. 4.19.15.37(9) (Dec. 12, 2008).  As a "Non-Rebate refund"

not subject to any exception (see, e.g., sec. 6211(b)(4)), the

TETR falls outside the "rebates" that affect the deficiency

calculation under section 6211(a)(2).

We therefore need not decide any issues arising from

Ms. Villafane's refund made in response to the claim in her

return.  We decide only the deficiency in her income tax.

To reflect the foregoing,

<u>An appropriate order and
decision will be entered</u>.